NOT FOR PUBLICATION (Doc. No. 16)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

CAMDEN VICINAGE

_____
:
SEMPRA ENERGY SOLUTIONS, LLC,   :
:
            Plaintiff,   :    Civil No. 1:10-CV-02060-RBK-JS
:
       v.   :    **OPINION**
:
EXECUTIVE CAMPUS, LLC,   :
:
            Defendant.   :
_____ :

**KUGLER** , United States District Judge:

    This matter involves an alleged breach of contract between an energy provider and a real estate management company. Plaintiff Sempra Energy Solutions, LLC ("Sempra") brings three claims for breach of contract against Defendant Executive Campus, LLC ("Executive"). Presently before the Court is Sempra's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the motion is **GRANTED**.

**I.      BACKGROUND**

    This case, currently before the Court on diversity jurisdiction pursuant to 28 U.S.C. § 1332, arises out of a contractual relationship between Sempra and Executive. Executive, a commercial real estate company headquartered in Cherry Hill, New Jersey

1

contracted with Sempra, a California-based energy provider, for energy services to Executive's facilities in Cherry Hill, New Jersey. Am. Compl. ¶¶ 1, 2, 7. A contract was signed that had an effective date of April 1, 2009. Sempra began supplying energy services on or about May 7, 2009. Mot. Summ. J., Aff. Sean Fallmer, ¶14. Sempra alleges that Executive received electricity but only paid a fraction of what it owed. Id. at ¶16. After invoices, warnings about defaulting and correspondence seeking compromise, Sempra finally stopped providing Executive's electricity. Id. at ¶¶17-20. On November 12, 2009, Sempra liquidated the energy positions that it had purchased in April to fulfill Executive's needs. Reply Aff. Eric Mueller, ¶10.

On January 8, 2010, Sempra sent an invoice in the amount of $846,428.64 to Executive; $541,265.64 in unpaid invoices for the electrical services delivered to Executive and a $305,163.00 "termination payment," representing the decline in price of the liquidated energy. Pl. Br. Supp. Mot. Summ. J., p.5. Sempra now seeks to collect the amount due on the invoices, the termination payment, attorney's fees and interest. Sempra filed the instant motion for summary judgment on July 1, 2011.[1]

## II.   STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party. Anderson v.

---

[1] Executive denies, but does not contradict, Sempra's evidence supporting its version of the facts. Because Executive puts forth no evidence in the record refuting Sempra's claims, this Court must adopt the evidence that Sempra has affirmatively established.

Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party satisfies this initial burden, the nonmoving party must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"  Corliss v. Varner, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations are the province of the factfinder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.    DISCUSSION

#### A.    SEMPRA'S ALLEGATIONS

Sempra alleges that Executive breached their contract, and pleads alternative causes of action of account stated and quantum meruit.  Sempra further argues that New York law should apply as specified in the contract.  Because of Executive's breach, Sempra claims that it is entitled to $541,265.64 for the unpaid invoices, and $305,163 based on the loss of value of the electricity that it had purchased in anticipation of Executive's electricity needs.  Sempra argues it is also owed reasonable attorney's fees, out-of-pocket disbursements, and interest on the past-due sums under the contract. Because Sempra's breach of contract claim is undisputed, it is deemed to be admitted by Executive.  Since the Court finds that Executive breached the contract, Sempra's request for alternative remedies under account stated and quantum meruit causes of action need not be addressed.  The only remaining issue is whether Executive must pay the contractually-stipulated termination payment, and if so, how much it should be.[2]

#### B.    DEFENSES

---

[2] Executive's Answer and Brief in Opposition do not dispute Sempra's contentions that Executive owes $541,265.64 for services rendered, nor does it dispute Sempra's claim for interest, attorney's fees and costs.  Therefore, they are deemed admitted.

Executive asserts three defenses: (a) New Jersey law should apply, regardless of the contractual agreement otherwise; (b) the $305,163 termination fee is a penalty, against the public policy of the State of New Jersey, and therefore should not be awarded to Sempra; and (c) Sempra has failed to mitigate its damages, and consequently its award should be reduced by the loss it could have avoided by mitigating.  Each of these defenses will be considered in turn.

**i.     CHOICE OF LAW**

Executive first argues that New Jersey law, rather than New York law, should apply in this case.  The parties' contract provides, in relevant part:

> THIS AGREEMENT AND THE RIGHTS AND DUTIES OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED, ENFORCED, AND PERFORMED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO THE PRINCIPLE OF CONFLICTS OF LAW.

(Pl.'s Mot. for Summ. J., Fallmer Moving Aff., Ex. D, Article 12(k) (emphasis in original)).  Relying on the Restatement (Second) of Conflict of Laws §187, Executive asserts that New Jersey law should apply because New York has "absolutely no relationship to the parties herein," and  New Jersey's strong policy toward mitigation and against penalties "makes the application of Law [sic] of New York one that would be contrary to the fundamental policy of New Jersey."  Sempra argues that Executive's arguments do not overcome the presumption of validity of the choice of law provision in the parties' contract.[3]

---

[3] Sempra's Reply Brief recites the Third Circuit's standard for validity of forum selection clauses, not the choice of law provisions that are in dispute here.  (Pl.'s Reply Br. at 2-3).

Because the Court hears this case pursuant to diversity jurisdiction, 28 U.S.C. § 1332, it applies state substantive law in deciding Sempra's claims. See Gasperini v. Ctr. for Humanities, 518 U.S. 415, 427, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996) ("Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."). Federal courts sitting in diversity "determine which state's substantive law applies by applying the choice-of-law rules of the jurisdiction in which the court sits." Garcia v. Plaza Oldsmobile LTD., 421 F.3d 216, 219 (3d Cir. 2005) (internal citations omitted). Therefore, the Court in this case must apply the choice of law rules of New Jersey to decide which state's substantive law to apply to Plaintiffs' claims.

The New Jersey Supreme Court has generally held that "when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." N. Bergen Rex Transp. v. Trailer Leasing Co., 730 A.2d 843, 847 (N.J. 1999). New Jersey follows the Restatement (Second) of Conflicts of Laws §187 which states that a contractual choice of law provision will not be followed if:

> "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which would be the state of the applicable law in the absence of an effective choice of law by the parties."

Instructional Sys., Inc. v. Computer Curriculum Corp., 614 A.2d 124, 133-34 (N.J. 1992) (quoting Restatement (Second) of Conflicts of Laws § 187 (1969)).

Here, the choice of law provision is not superseded by Restatement §187(a) because the Court finds that at least one party, namely Sempra, has a substantial relationship with New York.[4]  Sempra does business in New York and claims that the choice of law provision is a material inducement to contract.  Reply Aff. Supp. Mot. Summ. J., ¶21(c).  The Court finds that it is also not superseded by Restatement §187(b).  Although both states have an interest in the determination of this case, Executive has not shown that New Jersey has a materially greater interest than New York in having its law apply, nor has it cited a single fundamental policy of New Jersey that would be contravened by application of New York law.  Therefore, New York law properly applies to this matter.

ii.     **NATURE OF THE TERMINATION FEE**

Executive further argues that Sempra seeks to enforce a penalty which is against public policy.  Executive asserts that the fee does not represent a payment for "services provided or rendered," but is a penalty Executive owes "simply because the contract between the parties was terminated."  (Def.'s Br. Opp'n. Summ. J., p.2),  Sempra contends that the termination fee, which is enumerated in Article 7 of the parties' contract, is not punitive because it is limited to "the actual loss that plaintiff Sempra sustained when it was forced to liquidate energy futures that Sempra had purchased in order to be able to supply defendant Executive with the electricity and services required by the parties' contract."  (Pl.'s Reply Br. pp. 2-3).

---

[4] Although Executive correctly points out that neither they nor Sempra are incorporated in New York (Def.'s Br. Opp. Summ. J., p.1), a "substantial relationship" can be based upon other factors than incorporation.  See Restatement 2d of Conflict of Laws: Contracts § 187 cmt. f. (1988).

Under New York law, "[l]iquidated damages constitute the compensation which, the parties have agreed, should be paid in order to satisfy any loss or injury flowing from a breach of their contract." Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc., 361 N.E.2d 1015, 1017-18 (N.Y. 1977). Parties have the right to include such clauses in their contracts as long as the clause is not unconscionable and not contrary to public policy. Id. at 424. Whether a provision is an unenforceable penalty or an enforceable liquidated damages clause is a matter of law to be determined by the Court. Rattigan v. Commodore Int'l, Ltd., 739 F. Supp. 167, 169 (S.D.N.Y. 1990). When there is reasonable doubt, courts tend to use a construction that holds the provision to be a penalty. Id at 170. The defendant bears the burden of proving that the clause to which it freely contracted is, in fact, a penalty. Id.

Though New York law applies here, both New York and New Jersey law are consistent about what constitutes a penalty for breaching a contract. The New Jersey Supreme Court defined a penalty as "the sum a party agrees to pay in the event of a breach… not as a pre-estimate of probable actual damages, but as a punishment… designed to prevent the breach." Rosen v. Smith Barney, Inc., 950 A.2d 205, 207 (N.J. 2008). New York, in the same vein, considers liquidated damages to be a penalty when they are "plainly or grossly disproportionate to the probable loss anticipated when the contract was executed." Wechsler v. Hunt Health Systems, Ltd., 330 F. Supp. 2d 383, 413 (S.D.N.Y. 2003). Under both sets of state law, therefore, liquidated damages are considered a penalty when they do not reflect the actual or probable damages that a non-breaching party will suffer due to a breach, but instead, attempt to punish a party for a breach or dissuade that party from breaching in the first place.

Here, the $305,163 is a fee that was not fixed in advance. Sean Fallmer, formerly Sempra's Vice President of Commodity Pricing & Supply, avers in his Affidavit in Support of Summary Judgment that he personally calculated the number in accordance with Articles 7 & 11 of the parties' contract. Upon breach of the contract, Sempra had a contractual right to liquidate any positions it took in anticipation of Executive's energy needs. The price of the positions, however, had dropped approximately 26% from April 6, 2009 when they were purchased to November 12, 2009, when they were sold. Sempra states that this number is the actual loss Sempra sustained. Hypothetically, if the price had only fallen 13% rather than 26%, by the terms of the Article, Executive would owe $157,581.50. If the price had not fallen, Executive would ostensibly not owe a termination fee at all. It appears to the Court, then, that the nature of the termination payment is that of actual damages under the name "liquidation damages." Sempra seeking to recover its actual loss is neither unconscionable nor against the public policy of either state, and therefore, the termination fee is not a penalty.

3. **MITIGATION**

Executive also contends that Sempra both had a duty to mitigate its damages and failed to do so. Executive cites to no New York authority to support its claim of a duty, and also presents no factual basis for this conclusion that Sempra did not. On these facts alone, Executive's mitigation argument fails. Finally, the Court finds that if a duty for Sempra to mitigate its damages did exist, there is sufficient evidence that the contract's directives upon breach, which Sempra followed, were reasonable efforts to mitigate its damages.

To support its argument that a duty to mitigate existed, Executive relies on two New Jersey cases. <u>Lynch v. Scheininger</u>, 744 A.2d 113 (N.J. 2000) is a medical malpractice case that stands, *inter alia*, for the proposition that the doctrine of avoidable consequences is a factor in calculating damages, but does not bar recovery. <u>Id</u>. at 125-26. Neither its facts nor its legal analysis is applicable to this case. The second case cited by Executive, <u>Ingraham v. Trowbridge Builders</u>, 687 A.2d 785 (N.J. Super. App. Div. 1997), does posit that there is a duty to mitigate under New Jersey law for breach of contract. However, the New Jersey Supreme Court also held that the party that breaches a contract bears the burden of proving that the non-breaching party failed to make reasonable efforts to mitigate its damages. <u>Id</u>. at 792. Executive has made no such showing. When opposing a motion for summary judgment, the non-moving party cannot simply rest on mere allegations and legal conclusions. <u>Maguire v. Hughes Aircraft Corp.</u>, 912 F.2d 67, 72 (3rd Cir. 1990). Because Executive does not offer evidence contradicting Sempra's claim and evidence of mitigation, its argument must fail.

Here, it appears to the Court that the clause in the contract allowing Sempra to liquidate its holdings on behalf of Executive upon breach is actually an agreed-upon method of mitigating damages. Both parties agreed by signing the contract that Sempra would, in the event of the breach, sell the product it had purchased specifically for Executive in order minimize its losses. It is clear in the contract that Executive would be liable for any other losses after mitigation. The Court finds that even though it had no duty to do so, Sempra mitigated its damages as the contract required. Therefore, the Court rejects Executive's argument.

**IV.   CONCLUSION**

For the reasons set forth above, Sempra's motion for summary judgment is **GRANTED**. As Sempra has proven that there are no disputed issues of material fact, the Court finds that Executive breached its contract with Sempra, that Executive owes $541,265.64 to Sempra for electricity services rendered, and that Executive further owes $305,163 as a contractual termination payment for the actual loss Sempra incurred due to the breach. The Court further finds that Executive owes Sempra reasonable attorney's fees, costs, and interest as specified in the contract. An appropriate order shall issue.


Dated:  2/15/12                                                                  /s/ Robert B. Kugler
                                                                                     ROBERT B. KUGLER
                                                                                      United States District Judge